CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 27 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JOSHUA MITCH JOHNSON,

    Plaintiff,

v.

GENE JOHNSON, ET AL.,

    Defendant.

Case No. 7:09CV00207

MEMORANDUM OPINION

By: Glen E. Conrad
United States District Judge

    Plaintiff Joshua Mitch Johnson, a Virginia inmate proceeding pro se, brings this action as a civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. In his 44-page complaint, Johnson alleges that officials of the Department of Corrections ("VDOC") have implemented regulations that violate his federal due process rights and equal protection rights by arbitrarily denying him the right to earned sentence credit ("ESC"). He seeks injunctive and declaratory relief as well as compensatory and punitive damages against the defendants. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

## Background

Plaintiff Johnson's claims center on Virginia Code § 53.1-202.2 which reads as follows:

> Every person who is convicted of a felony offense committed on or after January 1, 1995, and who is sentenced to serve a term of incarceration in a state or local correctional facility shall be eligible to earn sentence credits in the manner prescribed by this article. Such eligibility shall commence upon the person's incarceration in any correctional facility following entry of a final order of conviction by the committing court. As used in this chapter, "sentence credit" and "earned sentence credit" [ESC] mean deductions from a person's term of confinement earned through adherence to rules prescribed pursuant to § 53.1-25,

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

through program participation as required by §§ 53.1-32.1 and 53.1-202.3, and by
meeting such other requirements as may be established by law or regulation. One
earned sentence credit shall equal a deduction of one day from a person's term of
incarceration.

Va. Code § 53.1-202.2(a). The next section provides: "A maximum of four and one-half sentence credits may be earned for each 30 days served. The earning of sentence credits shall be conditioned, in part, upon full participation in and cooperation with programs to which a person is assigned." Va. Code § 53.1-202.3. Section 53.1-202.4 authorizes the Board of Corrections, in its discretion, to issue regulations consistent with § 53.1-202.2, regarding how earned sentence credit may be earned, forfeited, and otherwise regulated.[2] The regulations that Johnson challenges, which took effect on February 1, 2007, are:

1. VDOC Operating Procedure ("DOP") 830.3(V)(H)(5)(b):

An offender serving life imprisonment shall not earn ESC but may be recognized
for individual adjustment and performance representative of an ESC level in
accordance with procedures for ESC level assignment. The offender may be
awarded that level for recognition purposes only by designating the level as L-I,
L-II, L-III, or L-IV.[3]

---

[2] Section 53.1-202.4 reads as follows:
The Board shall:
   1. Establish the criteria upon which a person shall be deemed to have earned sentence credits;
   2. Establish the bases upon which earned sentence credits may be forfeited;
   3. Establish the number of earned sentence credits which will be forfeited for violations of various (i) institutional rules, (ii) program participation requirements or (iii) other requirements for the retention of sentence credits; and
   4. Establish such additional requirements for the earning of sentence credits as may be deemed advisable and as are consistent with the purposes of this article.

[3] DOP 830.3 replaced a prior, nearly identical regulation, DOP 807-7.6(5), effective from January 1, 1995 until January 31, 2007, which read, in pertinent part:
   Life Imprisonment or Multiple Life Sentences. An inmate serving life imprisonment shall not earn ESC but may be recognized for individual adjustment and performance representative of an ESC level in accordance with procedures for ESC level assignment. The inmate may be awarded that level for recognition purposes only by designating his level as L-I, L-II, L-III or L-IV.
(Compl. Ex. B.)

2. DOP 830.3(VIII)(C):

> Offenders serving one or more life sentences are not eligible to receive earned sentence credits, but should be awarded L-I, L-II, L-II, or L-IV class levels for recognition purposes.

(See Compl. Ex. C.)

Johnson's submissions provide the following background facts relevant to his claims. He committed his crimes on March 6, 1995, was convicted on June 23, 1995, was sentenced on October 24, 1995 to life imprisonment,[4] and was received into a VDOC prison facility for the first time on December 19, 1995. When Johnson entered the VDOC, prison officials assigned him to an ESC earning Level III, allowing him to earn 1.5 ESC days for every thirty days he served. With the exception of 1998, when Johnson was briefly classified at Level II, he has remained at an ESC Level III ever since. Yet, he has not actually been allowed to earn ESC or to have ESC applied to his sentence. He claims that prison officials have thereby violated his due process and equal protection rights and seeks injunctive relief from the court directing them to change their policies.[5]

Specifically, Johnson claims that the "the mandatory and unambiguous language" of § 53.1-202.2 "created a protect[ed] entitlement" for all inmates, like himself, whose crimes were committed after January 1, 1995, to amass ESC credit related to their criminal sentences. He argues that DOP 830.3 and its predecessor regulation, DOP 807, have wrongfully interfered with his liberty interest in earning ESC without providing him with the federal procedural protections mandated under Wolff v. McDonnell, 418 U.S. 539 (1974). He also claims that these regulations violate equal protection principles by treating him differently than other inmates without furthering any legitimate penological interest.

---

[4] Documents included as part of Johnson's complaint indicate that he was sentenced to life imprisonment plus twenty years and twelve months. (Compl. Ex. A.)

[5] Johnson's requested remedies in this action do not include receiving ESC credit against whatever set terms of confinement he may have in addition to his life sentence. He also asserts that he is not requesting relief that will "invalidate the duration of his confinement." (Compl. 20.)

## Discussion

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." In reviewing the case for possible summary dismissal, the court must accept allegations in the complaint as true and draw all reasonable factual inferences in the plaintiff's favor. See De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003).

### A. Due Process

When a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, confinement does not strip inmates of all liberty interests, and state prison regulations may create liberty interests. Id. Such liberty

> interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484 (1995).

"The Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." Wolff, 418 U.S. at 557. When state law allows an inmate to earn good conduct credit and provides that such credit may "be forfeited only for serious misbehavior," however, an inmate acquires a liberty interest in good conduct time that he has already earned. Id. The Due Process Clause mandates specific procedural safeguards before officials may revoke any or all of that earned good conduct time as punishment for a violation of prison disciplinary rules. Id. at 564-70. On the other hand, courts have found that Virginia's classification scheme governing the

-4-

rate at which an inmate earns good conduct time does not create a liberty interest in avoiding changes in this classification alone, since it is subject to change, based on the inmate's own behavior and the discretion of prison officials. See, e.g., Oliver v. Powell, 250 F. Supp.2d 593, 605 (E.D. Va. 2002); Garrett v. Angelone, 940 F. Supp.2d 933, 943 (W.D. Va.1996). In other words, because periodic changes to the rate at which an inmate earns ESC credits are routine under Virginia law and do not "inevitably affect the duration" of an inmate's confinement, the inmate has no liberty interest in maintaining any particular ESC earning rate. Sandin, 525 U.S. at 486-87.

Applying these principles to Johnson's claims, the court concludes that he has no liberty interest in earning ESC credit. First, the Constitution does not give him a right to any reduction in his criminal sentence based on good conduct while incarcerated. Therefore, although he offers evidence that he has had no major disciplinary convictions during his stay in the VDOC, this fact alone does not create any entitlement for him to serve less time that his imposed sentences decree.

Second, the state statute on which he relies, Virginia Code § 53.1-202.2, does not create any right for him to earn ESC days or to have them credited against the duration of his confinement. By its express terms, § 53.1-202.2 provides that only a "person who . . . is sentenced to serve a term of incarceration in a state or local correctional facility shall be eligible to earn sentence credits in the manner prescribed by this article" (emphasis added). Thus, under this section, an inmate serving a life sentence rather than a set term of confinement is not "eligible" to earn ESC. This omission in the statute is only logical, since a life sentence has no known end date from which to subtract earned good conduct time in order to shorten the inmate's period of detention.

Third, since Johnson is not eligible under the statute itself to earn ESC credits, implementation of the challenged section of DOP 830.3 did not deprive him of any protected interest in ESC credits as defined for inmates who are serving set terms of confinement. By

-5-

stating that [a]n offender serving life imprisonment shall not earn ESC," the DOP merely presented facts in evidence from the plain language of § 53.1-202.2(a). Moreover, as § 53.1-202.2 created no protected right for Johnson to earn ESC credits, he had no federal right to the procedural protections mandated under Wolff, 418 U.S. at 557.

Finally, the court finds no due process implications in the fact that VDOC regulations allow Johnson and other inmates serving life sentences to receive an ESC classification for purposes of recognition only, even though they cannot earn ESC credits in the same manner as do inmates serving set prison terms. In any event, Johnson offers no indication that his assignments to an ESC classification have been arbitrary or inconsistent with officials' legitimate penological interest in managing VDOC inmates effectively, based in part on their conduct and rehabilitative efforts.

**B. Equal Protection**

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. It "does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citations and internal quotation marks omitted). Thus, to prove an equal protection claim, litigants "'must first demonstrate that [they] ha[ve] been treated differently from others with whom [they are] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Veney, 293 F.3d at 730 (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Where the different treatment at issue is rationally related to a legitimate governmental purpose, an equal protection claim fails. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) (finding no equal protection violation where inmates sentenced in D.C. courts and housed in federal prisons could not earn good time at as favorable a rate as inmates sentenced in D.C. courts and housed in D.C. prisons) (citations omitted).

Under these principles, Johnson's allegations fail to state any claim that he has been denied equal protection. First, as an inmate on whom the state has imposed a sentence of life imprisonment, he is not similarly situated to inmates serving set terms of years in confinement for their crimes. Different treatment of such different groups of inmates does not implicate federal equal protection rights. Second, the VDOC regulation that he challenges clearly furthers legitimate penological interests. By providing for ESC classification of an inmate like Johnson, who is serving a life sentence, VDOC officials preserve a record of that inmate's rehabilitation efforts and behavior, which can then be utilized for purposes of job assignments, housing assignments, and granting other privileges.

## **Conclusion**

For the stated reasons, the court finds that Johnson's allegations fail to present any constitutional claims. Accordingly, the action must be dismissed, pursuant to § 1915A(b)(1). An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 27th day of July, 2009.

*/s/ Glen E. Conrad*
United States District Judge